ADAMS *v.* SEIBLY.

1. DIVORCE—ALIMONY—REFUSAL TO ALLOW—JUDICIAL DISCRETION.
   Where a divorce was granted for desertion, reserving, without prejudice, the question of alimony, and the court to which application for alimony was subsequently made found, on additional testimony being taken, that the divorce was procured by deliberate deception on the part of the complainant, it was proper for the court, in exercising its discretion as to the award of alimony, to take into consideration the manner in which the divorce was obtained.

2. SAME—EVIDENCE.
   But complainant's admission that her husband went away in consequence of her refusal to live with him did not justify the denial of alimony altogether; it appearing that he was not free from fault, that he afforded complainant some ground for her refusal to cohabit with him, and that he gave her no assistance after the separation, but left her to support herself, notwithstanding he had ample means from which to provide for her support.

Appeal from Ingham; Person, J.   Submitted October 14, 1897.   Decided December 21, 1897.

Petition by Elfina A. Adams against Fred M. Seibly, administrator with the will annexed of the estate of petitioner's former husband, Edward J. Adams, deceased, and others, for an allowance of alimony.   From a decree dismissing the petition, petitioner appeals.   Reversed.

*Q. A. Smith* (*M. V. Montgomery*, of counsel), for petitioner.

*John I. Carpenter* (*Cahill & Ostrander*, of counsel), for defendants.

HOOKER, J.   In the year 1889 a decree of divorce from the bonds of matrimony was granted to the complainant by the circuit court in chancery for the county of Ingham, Judge Peck presiding.   The ground stated in the decree was desertion.   The defendant allowed the bill to be taken

as confessed, for failure to file an answer, though his appearance was duly entered by a solicitor, who was present at the hearing, and cross-examined the complainant, who was called as a witness upon her own behalf. The underwriting upon the subpœna made no allusion to alimony. It was as follows:

"Underwriting. A personal decree is sought against the defendant, for divorce; and the bill is filed to reach interests in property, and not to obtain any further relief, against the remainder of the defendants."

At the close of the testimony, the court announced that a decree might be taken upon the ground of desertion; and, to a request that alimony be granted, the court said:

"I think I will make no order for alimony. You may state in the decree that the question of alimony is reserved until we can get some personal service on him. The decree will be practically worthless, without personal service on him, with reference to that subject, and I hesitate to make any decree on the subject of alimony in his absence; but you may preserve your rights in that regard by stating in the decree that the entire subject, as to alimony, is reserved, and without prejudice to make any application you can when you get jurisdiction of the defendant."

Counsel pressed the matter, and the court replied:

"With reference to permanent alimony, I will let it stand. As I told you, I do not feel obliged to make an order for permanent alimony."

No further proceedings were had until June, 1895, when, the defendant being dead, a petition was filed for an adjudication of the question of alimony. Upon the hearing, the testimony which was before the court on the original hearing was introduced, and witnesses were sworn,— among them, the complainant, who, on cross-examination, gave testimony which, in the opinion of the present judge of said court, showed that the defendant did not desert the complainant, but that she refused to live with him. In an opinion filed in the cause, he states that the testimony of the complainant, taken before him, shows that the decree was obtained by deliberate deception by the com-

plainant, and he determined that, while he could not vacate the decree of divorce, he might properly refuse further relief, upon discovery of the fraud upon the court, and denied the prayer of the petitioner. The complainant has appealed.

Ordinarily the question whether or not permanent alimony shall be allowed is determined at the time the decree for divorce is announced (or, if not, it is later), by the same judge. He may withhold the decision of the alimony question for decision later, upon additional testimony, or upon the evidence produced at the hearing, if that subject has been gone into. In either case he may consider all of the evidence, and in the former he may consider any testimony which tends to show that it should or should not be allowed, or which has a bearing upon the question of amount. We think the question should not be concluded by the fact that a divorce had been granted, especially where the judge is convinced that it was obtained by a suppression or perversion of facts by the complainant herself. If it should be conceded that the complainant, by virtue of her decree of divorce, became entitled to alimony, the amount would still be open; and we do not understand that the inquiry would thereafter be limited to the amount of property owned by the parties, and their conduct after the decree was granted. But the granting of a decree of divorce does not settle the right of the wife to permanent alimony, which is dependent upon the statute. Whether she shall have anything more than an immediate right to dower, under the statute, is a matter of judicial discretion, and her conduct has an important bearing upon it. We think that it was competent for the court to take into consideration the fact (if it were one), appearing then for the first time, that the wife deserted her husband, although he should also be of the opinion that a decree of divorce should not have been granted. If it were true that she had obtained a decree of divorce that she was not entitled to, it would not follow that, because she had succeeded in imposing upon the court so

far as to unjustly obtain a modicum of the relief that it was in the power of the court to grant, the court thereby became bound, and not only could not retrace its steps and set aside the wrongful order, but must continue to grant further undeserved relief.

The question of alimony being here for review, we may consider the whole record, which satisfies us that the defendant was not free from fault in the transaction; and while the cross-examination of the complainant shows that she refused to live with him at the time of the separation, and that he thereupon went away, and they never lived together afterwards, and perhaps justifies the legal conclusion that there was not a technical desertion by the defendant, it also leads us to believe that he never provided well for his wife, but left her largely upon her own resources. The original testimony shows that she supported herself nearly all of the time, and that she had no assistance from him after the separation. We are not satisfied that her refusal to cohabit with him was entirely without cause, or justified his abandonment of or failure to provide for her. He had ample means, yet he failed to do so, and persisted in that course against the express order for temporary alimony, which he did not pay. It may be that these facts influenced Judge Peck in determining that she was entitled to a divorce, and substantial justice may have been done in granting the decree, to which the defendant practically confessed that she was entitled, by declining to answer, and acquiescing in the result. If she is to be believed, she worked hard for years, and supported herself, thus indirectly contributing to his income, of which he had laid up several thousand dollars at the time of the divorce. Upon the whole, we think that she should have alimony. An order will be entered fixing the amonnt at $2,000,—the same being in full of all claims for temporary alimony and costs, and in lieu of any claim for dower,—and the case will be remanded for further proceedings.

LONG, C. J., GRANT and MOORE, JJ., concurred. MONTGOMERY, J., did not sit.